IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BEATRICE KOON, as mother and   :
next friend of Elijah Glay,
et al.                     :

     v.                  :   Civil Action No. DKC 17-2799

                          :

PRINCE GEORGE'S COUNTY, MD,
et al.                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action is the motion for summary judgment filed by Defendants Prince George's County Police Department, Prince George's County ("the County"), and Officer Tavarras Edwards (collectively "Defendants"). (ECF No. 44). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted in part and denied in part.

## I. Background

### A. Factual Background[1]

On October 2, 2013, at approximately 2:00 a.m., Officer Edwards and his partner, Officer Jerome McCann, responded to a call about a woman being assaulted at an apartment complex. The officers were only told that the victim was sitting near a

---

[1] Unless otherwise noted, the facts are undisputed and construed in the light most favorable to the nonmovant.

dumpster, and her assailants were two "black males wearing dark clothing." The officers took a couple of minutes to reach the apartment complex where the assault was reported. After reaching the apartment complex, the officers drove around, and then left their cars. While on foot, they found the person who reported the assault and that person pointed them to a woman who appeared to be the victim. She was seated on the curb near a dumpster in a parking lot. When the officers located the victim, a fence was between the officers and the victim. Officer McCann was physically unable to climb the fence and walked around the fence. Officer Edwards instead climbed over the fence alone. (ECF No. 44-2, at 6-8).

Officer Edwards approached the woman by himself and attempted to talk to her, but she did not respond to his questions. He saw Elijah Glay near the dumpster and concluded that Mr. Glay must be one of the assailants because Mr. Glay was "a black male, 20's to 30's, [and] . . . wearing dark clothes." (ECF No. 44-2, at 8). Mr. Glay was alone at that time. Officer Edwards did not get confirmation from the victim that Mr. Glay was one of the assailants.

According to Officer Edwards, he yelled "Police. Stop" when he first saw Mr. Glay, but Mr. Glay took off running. Officer Edwards followed, and Mr. Glay ran some distance between cars. Eventually, Officer Edwards saw Mr. Glay try to jump a fence,

unsuccessfully, and he fell.  Officer Edwards then caught up with him and "corner[ed] him near the wood line."[2]  Officer Edwards stated that Mr. Glay had a black travel bag of some kind.  (ECF No. 44-2, at 13).

According to Officer Edwards, he told Mr. Glay to "Show me your hands," and "Stay down." He also said, "Don't move" and "Keep your hands where I can see them."  Mr. Glay turned up, or lifted up, bent up and "begins to reach inside the black bag.  That's when I deployed my two shots . . . ."

Officer Edwards stated:

> He did not produce a weapon at that point.
> Um, I didn't want to take the chance because
> I was in the grassy portion.  I didn't have
> any cover available to me.  So I couldn't-I
> didn't- I didn't feel m-I felt like my life
> was threatened.  I didn't feel like I could
> wait to see what was going to come out of that
> bag because he had already, you know, failed
> to re-you know, failed to stop to my commands.
> So-and my only thought was that he doesn't
> want to be caught.  He wants to get away by
> any means even if it means taking my life. So
> out of fear I just deployed my rounds.

Mr. Glay died from the gunshots.  Mr. Glay was unarmed when Officer Edwards shot him.  (ECF No. 46, at 23-25).

**B.  Procedural Background**

On September 12, 2016, Plaintiff Beatrice Koon ("Plaintiff") filed a complaint in the Circuit Court for Prince George's County,

---

[2] Officer Edwards later said "after he fails to hop the fence he falls down on the ground and that's where I'm able to cover him."

Maryland.  (ECF No. 2).  Plaintiff is the mother of the deceased Elijah Glay.  N.G., the deceased's daughter, was named a "Use Plaintiff."[3]  (*Id.* at 3).  Plaintiffs' original complaint brought a claim for wrongful death and negligence.  On July 31, 2017, Plaintiffs filed an amended complaint bringing additional claims pursuant to 42 U.S.C. § 1983.  (ECF No. 30).[4]  Defendants then removed this action to the United States District Court for the District of Maryland.  (ECF No. 1).

On March 15, 2018, after the discovery period concluded, Defendants moved for summary judgment.  (ECF No. 44).  Plaintiffs responded to Defendants' motion for summary judgment on May 1, 2018, and moved for leave to allow late filing.  (ECF No. 46).  Defendants replied on May 16, 2018.  (ECF No. 47).

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*

---

[3] Pursuant to Md.Code Ann. § 15-1001(b), "[a]ll persons who are or may be entitled by law to claim damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action."  Plaintiffs not joining in the action are designated "Use Plaintiffs."

[4] Apparently, Plaintiffs were unable to serve Officer Edwards for close to a year which delayed the start of discovery.  (ECF No. 28).  Service was finally effectuated on September 1, 2017. (ECF No. 1 ¶ 3).

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248-50. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

## III. Defendant Prince George's County Police Department

Defendants move to dismiss Prince George's County Police Department on the ground that it is not a proper party. (ECF No. 44-1, at 24). A Maryland county is a corporate entity, *see generally Rios v. Montgomery Cty.*, 386 Md. 104 (2005), and Fed.R.Civ.P. 17(b)(2) states that a corporation's capacity to be sued is determined by the law under which it was organized. Pursuant to state law, the Prince George's County Charter mandates

that the corporate name of the County is "Prince George's County, Maryland," and "the County shall be designated as such in all actions and proceedings touching its liabilities and duties." *Abunaw v. Prince George's Corr. Dep't*, No. DKC-13-2746, 2014 WL 3697967, at *2 (D.Md. July 23, 2014) (citing Prince George's County Charter § 103). Thus, a claim against the "Prince George's County Police Department" should be brought as a claim against the county itself. *See Hines v. French*, 157 Md.App. 536, 573 (2004). Where the county is already named in the suit, claims against the Prince George's County Police Department are properly dismissed. *See, e.g.*, *Hamilton v. Prince George's Cty. Police Dep't*, No. DKC-17-2300, 2018 WL 1365847 (D.Md. Mar. 16, 2018); *Dodson v. Prince George's Cty.*, No. JKS-13-2916, 2016 WL 67255 (D.Md. Jan. 6, 2016); *Stewart v. Prince George's Cty.*, No. AW-01-302, 2001 WL 759890 (D.Md. May 23, 2001). Plaintiffs' claim against Defendant Prince George's County Police Department will be dismissed.

## IV. 42 U.S.C. § 1983

### A. Excessive Force

Plaintiffs bring claims pursuant to Section 1983 for excessive force in violation of Mr. Glay's Fourth Amendment rights. (ECF No. 30, at 13). Defendants argue that Officer Edwards did not violate Mr. Glay's rights. (ECF No. 44, at 9-16). Whether Officer Edwards used unconstitutional force is determined under the Fourth Amendment's "objective reasonableness standard."

*Graham v. Connor*, 490 U.S. 386, 388 (1989). This standard "requires a careful balancing of 'the nature and quality of the intrusion on the Plaintiffs' Fourth Amendment interests' against the countervailing government interests at stake." *Id.* at 396 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). To determine whether a use of force is unreasonable, courts look to three factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018) (quoting *Graham*, 490 U.S. at 396-97) (alteration in the original). Under this framework, "[deadly force] may only be used when an 'officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Connor v. Thompson*, 647 F.App'x 231, 237 (4th Cir. 2016) (quoting *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)).

Here, the evidence, when viewed in the light most favorable to Plaintiffs, would support a claim that Officer Edwards violated Mr. Glay's constitutional rights. Officer Edwards was investigating a suspected assault, but not one that reportedly involved the use of deadly force or a deadly weapon. The only description provided to Officer Edwards was "black males wearing dark clothing." (ECF No. 44-2, at 6). Mr. Glay was alone when

Officer Edwards saw him, and the victim did not identify Mr. Glay. Officer Edwards yelled at Mr. Glay to stop and chased Mr. Glay, when he ran instead. Mr. Glay did not attempt to run toward people or a crowded area. Mr. Glay fell while trying to climb over a fence. Officer Edwards shot Mr. Glay while Mr. Glay was still on the ground. At the time of the shooting, Mr. Glay was incapable of further flight. The question is whether Officer Edwards reasonably believed Mr. Glay posed a significant threat to the officer.

Defendants argue that no violation occurred based on Officer Edwards' statement that he saw Mr. Glay begin to reach into the bag and feared for his life, but "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorgle v. Rutherford*, 272 F.3d 1272, 1781 (9th Cir. 2001). When the only eyewitness is the officer because of the use of deadly force, a court must be especially careful to assess the circumstances:

> "Deadly force cases pose a particularly difficult problem . . . because the officer defendant is often the only surviving eyewitness." [*Scott v.*] *Henrich,* 39 F.3d [912 (9th Cir. 1994)] at 915. This is one of those difficult cases. Gonzalez cannot testify because he is dead, and no other witnesses saw the incident. In such cases, we "must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify." *Id.* Accordingly, we

carefully examine "all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, . . . to determine whether the officer's story is internally consistent and consistent with other known facts." *Id.* We must also examine "circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Id.* We have held that summary judgment should be granted sparingly in excessive force cases. *Glenn v. Washington County,* 673 F.3d 864, 871 (9th Cir. 2011). This principle applies with particular force where the only witness other than the officers was killed during the encounter.

*Gonzalez v. City of Anaheim*, 747 F.3d 789, 794–95 (9th Cir. 2014).

See also *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) ("When there is contrary evidence, a 'court may not simply accept what may be a self-serving account by the police officer.'") (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). The court cautioned that:

In such circumstances, "a court must undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at a trial." *Plakas v. Drinski,* 19 F.3d 1143, 1147 (7th Cir.1994). When there is contrary evidence, a "court may not simply accept what may be a self-serving account by the police officer." *Scott,* 39 F.3d at 915. *Cf. Elliott v. Leavitt,* 99 F.3d 640, 644–45 (4th Cir.1996) (noting officers' account in lethal force case was consistent with the physical evidence). Indeed, several courts have vacated the entry of summary judgment when the physical evidence undermined the officers' assertions that they feared for their safety before deploying lethal force, even when there was no other witness to the

shooting. *See, e.g., Abraham v. Raso,* 183 F.3d 279, 293–94 (3d Cir.1999) (ballistic and videotape evidence contradicted security guards' assertions); *Hopkins v. Andaya,* 958 F.2d 881, 885 (9th Cir.1992) ("[T]he medical evidence in the record undermines [the officer]'s story in numerous ways."); *Ting v. United States,* 927 F.2d 1504, 1510 (9th Cir.1991) (ballistic evidence undermined claim that decedent was advancing threateningly toward officer).

Officer Edwards claims that he first told Mr. Glay to stay on the ground and show his hands, Mr. Glay did not obey, Mr. Glay reached into a bag, and Officer Edwards, fearing for his life, shot Mr. Glay. (ECF No. 44-2, at 16). Based on that version of events, Defendants argue that they are entitled to judgment. Defendants, however, do not support their version of events with sufficient independent evidence.

As pointed out by Plaintiffs, there are aspects of the circumstances that raise questions. It was very dark, so what the officer could see is in question. There are conflicting reports stating that Mr. Glay reached towards his waistband area (ECF No. 46, at 22) and reached into a satchel draped over his shoulder (*Id.*, at 24). A firefighter reported seeing a cell phone in Mr. Glay's hand. (*Id.*, at 26). Two gunshots were observed, one in the right chest and the other in the left flank. (*Id.*, at 49). Officer Edwards said he fired rapidly—was Mr. Glay still falling when shot so that the bullets hit in different sides of his body?

How could Mr. Glay be reaching into a bag (that has not been produced) if he was in the process of falling when shot?

Defendants have not provided any video. Although another resident of the Lighthouse at Twin Lakes apartment complex "told a neighbor that he had witnessed the incident[,]" Defendants have not offered any testimony from witnesses. (ECF No. 46, at 26). Officer Edwards' own partner does not offer any corroboration. No evidence of the bag even existing is submitted with their motion. Indeed, Defendants provide Officer Edwards' statement via the transcript of the Prince George's County Police Department's internal interview. This interview was led by another officer, included no cross examination, and could have been done for the specific purpose of limiting legal exposure. The statement does not appear to have been given under oath initially, although Officer Edwards has now appended an affidavit to it. (ECF No. 44-2). In the end, Defendants are attempting to meet their burden for summary judgment by having the court credit Officer Edwards' statement, but "[c]redibility determinations . . . are jury functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, Defendants have not met their burden.

In support of their argument that Officer Edwards reasonably believed Mr. Glay posed a threat of death or physical injury, Defendants predominantly rely on *Slattery v. Rizzo*, 939 F.2d 213

(4th Cir. 1991) and *Anderson v. Russell*, 247 F.3d 125 (4th Cir.

2001). *Slattery* involved a shooting that occurred in Centerville,

Virginia during a sting operation by the Fairfax County, Virginia

Narcotics Enforcement Team. The sting took place in the parking

lot of the Bull Run Grill. The location "had the reputation of

being an open-air drug market" and at least three "past incidents

involving weapons and violence" occurred there prior to the sting.

*Slattery*, 939 F.2d at 214. One of the suspects police encountered

during the sting remained in his vehicle despite police orders to

exit. An officer shot the suspect after seeing him continuously

reach for an object, later determined to be a beer bottle, with

his left hand. The Fourth Circuit found the officer's use of

deadly force reasonable and granted him qualified immunity. In

*Anderson,* the Fourth Circuit held that an officer's use of deadly

force was reasonable after a potentially armed suspect lowered his

hands towards what the officer perceived to be a gun. Before the

shooting occurred, a mall patron informed the officer, a Prince

George's County police officer providing part-time security

services at Prince George's Plaza mall, that the suspect appeared

to have a gun concealed under his clothing. The officer

corroborated the information by observing the suspect and viewing

a bulge near the left side of the suspect's waistband. When

confronted by officers and directed to keep his hands in the air,

the suspect lowered his hands without explanation to turn off a

Walkman radio in his left back pocket. Although he was unarmed, police found that the bulge on plaintiff's waist was created by a shoe polish container inside an eye-glasses case.

As Defendants note, *Anderson* and *Slattery* involve scenarios where an officer incorrectly believed that a suspect possessed a gun. However, Defendants fail to address how the facts here are distinct from those in *Anderson* and *Slattery*. There is no evidence suggesting that Officer Edwards received word that Mr. Glay was potentially armed or that incidents of weapons-related violence often take place in the location where the shooting occurred. Additionally, the officers' perception of a potential weapon in *Anderson* and *Slattery* were confirmed by other officers, witnesses, or both. Officer Edwards' description here lacks any confirmatory secondhand accounts. Thus, Defendants' reliance on these cases is misplaced because the amount of evidence supporting Officer Edwards' conclusion falls far short in comparison.

Defendants next argue that even if Mr. Glay's constitutional rights were violated, Officer Edwards is entitled to qualified immunity. (ECF No. 44-1, at 14). Qualified immunity is an affirmative defense to Section 1983 claims and "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An officer is entitled to qualified immunity even if he violates a person's constitutional rights, when the right at issue was not "clearly established" or when "a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights." *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)).

Defendants contend that at "the time of the incident it had not been clearly established that using deadly force against a person who matched the description of a suspect, who fled from a police officer, and who disobeyed a police officer's commands and reached into a bag was unreasonable." (ECF No. 44-1, at 14). Defendants misstate the facts and law. The only description Officer Edwards had of the suspect was that he was one of two black males in dark clothing, hardly a specific description. As previously explained, Defendants have not established that Mr. Glay disobeyed an officer's command when he was on the ground or that he reached into a bag. The question is whether the use of deadly force against a person who fled from police is justified when that person is no longer capable of flight and poses no significant threat to the safety of the officer. The Supreme Court of the United States established more than thirty years ago that deadly force "may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the

suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3.

Defendants also argue that even if Mr. Glay did not have a gun, Officer Edwards is entitled to qualified immunity because his mistake of fact — believing Mr. Glay was reaching for a gun — was reasonable. This argument must be rejected because no evidence, other than Officer Edwards' statement, supports the contention that Mr. Glay "disobeyed [Officer Edwards'] commands not to move and made a life-threatening movement." (ECF No. 44-1, at 18).

In addition, Defendants have not provided enough evidence to demonstrate that Officer Edwards made a reasonable mistake of fact. *Henry v. Purnell*, 652 F.3d 524, 535 (4th Cir. 2011). There was no report of a gun, no movements to suggest the existence of the gun, Mr. Glay had never reached for a gun during the time Officer Edwards was chasing him, and Officer Edwards never saw a gun on Mr. Glay. Officer Edwards had minimal evidence linking Mr. Glay to a crime. The crime to which Officer Edwards was responding did not involve deadly force. Officer Edwards shot Mr. Glay when Mr. Glay was falling or on the ground after Mr. Glay had just fallen. There is no expert report indicating that normally people who commit assaults have deadly weapons, and no evidence that Mr. Glay was known to Officer Edwards to carry a weapon. Defendants offer no evidence of the bag's existence beyond Officer Edwards' statement. On these facts, a reasonable jury could disbelieve

that Officer Edwards feared for his life or conclude that fearing for his life was not objectively reasonable. Because Officer Edwards was the only witness at the scene and the amount of evidence provided to back up his account is meager at best, he is not entitled to qualified immunity at this juncture.

**B.    Failure to Intervene**

Plaintiffs bring a claim for failure to intervene. (ECF No. 30 ¶¶ 57-62). This claim apparently refers to Officer McCann, who separated from Officer Edwards prior to the shooting.[5] (ECF No. 46, at 19). An officer is liable for failure to intervene only when he "(1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002). As Plaintiffs explain, "During the whole, ordeal Officer McCann was nowhere to be found . . . . it is not clear when [Officer] McCann finally came on the scene to render aide." (ECF No. 46, at 19). Because Officer McCann was "nowhere to be found" when the shooting occurred, he was not confronted with a fellow officer's illegal act, did not possess the power to prevent it, and did not choose a course of inaction. *See Thomas v. Holly*, 533 F.App'x 208, 221-22 (4th Cir. 2013) (granting judgment to officers on failure to intervene claims when officers were not at the scene

---

[5] In one of many pleading failures, Plaintiffs did not name Officer McCann as a defendant.

when the alleged constitutional violation occurred). Accordingly, Defendants' motion for summary judgment on the failure to intervene claim will be granted.

### C.   Timely Medical Care

Plaintiffs allege that Defendants violated Mr. Glay's constitutional rights by failing to provide him with timely medical care. (ECF No. 30 ¶¶ 69-74). "The Due Process Clause [of the Fourteenth Amendment] . . . does require the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). The government must provide adequate medical care and violates a Plaintiffs' rights when a failure to provide medical care amounts to deliberate indifference to a serious medical need. *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "In order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without" a legitimate reason. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). After the shooting, Officer Edwards provided chest compressions and medical personnel came to the scene to provide treatment. (ECF No. 46, at 24). Plaintiffs provide no evidence that Defendants denied Mr. Glay sufficient medical attention. Accordingly, Defendants' motion for

summary judgment on the deliberate indifference to medical needs claim will be granted.

### D.  Substantive Due Process

Plaintiffs allege that Officer Edwards violated Mr. Glay's substantive due process rights.  (ECF No. 30 ¶¶ 63-68).  The Supreme Court, however, has held that "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Connor*, 490 U.S. at 395. Because Mr. Glay was never arrested, his claims must be analyzed under the Fourth Amendment and not the Fourteenth.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' substantive due process claim will be granted.

### E.  Claims against Prince George's County

Plaintiffs seek to hold the County liable under § 1983.  (ECF No. 30 ¶ 55).  To prevail on such a claim, Plaintiffs must "prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (quoting *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).  Here, Plaintiffs have only provided vague allegations of a policy and have not given any

support that such a policy exists. Plaintiffs have also failed to connect any such policy to the action of Officer Edwards. Accordingly, Defendants' motion for summary judgment on the claims against the County will be granted.

## V.    Immunity from State Law Claims

Defendants assert that the County is subject to governmental immunity from the state law claims. (ECF No. 44-1, at 18). "Under Maryland law, a county 'is immune from liability for tortious conduct committed while the entity was acting in a governmental capacity.'" *Gray-Hopkins v. Prince George's Cty.*, 309 F.3d 224, 234 (4th Cir. 2002) (quoting *DiPino v. Davis*, 354 Md. 18, 47 (1999)). Investigating a crime is "quintessentially governmental in nature." *Hirpassa v. Prince George's Cty., Md.*, No. RWT 09-cv-2631, 2010 WL 2730651, at *10 (D.Md. July 9, 2010) (quoting *Dipino*, 354 Md. at 48)). Because Officer Edwards was investigating a crime, the County was acting in a governmental capacity at the time of the incident giving rise to these claims. The County's immunity has not been legislatively waived in this context, and, therefore, it is shielded from liability. *See Gray-Hopkins*, 309 F.3d at 234 (finding a county immune from intentional tort claims based on an officer's action in shooting a suspect); *Njang v. Montgomery Cty.*, 279 F.App'x 209, 217 (4th Cir. 2008) (affirming dismissal of negligence claims against county on the grounds of governmental immunity); *Hirpassa*, 2010 WL 2730651, at *10 (holding

that governmental immunity protected county from liability in a wrongful death action).  Accordingly, Defendants' motion for summary judgment on Plaintiffs' wrongful death and negligence claims against the County is granted.

Defendants also assert that Officer Edwards is subject to public official immunity from tort claims under state law.  (ECF No. 44-1, at 21).  An officer is immune from civil liability when he is acting: (1) "in a discretionary capacity"; (2) "without malice"; and (3) "within the scope of [his] employment[.]"  Md.Code Ann., Cts. & Jud. Proc. § 5-507(b)(1); *see Livesay v. Baltimore Cty.*, 384 Md. 1, 12 (2004) (finding that public official immunity applied to county officers).  Here, investigating crimes is within the scope of Officer Edwards' employment, and pursuing a suspect is a discretionary act.  *See Balt. Police Dep't v. Cherkes*, 140 Md.App. 282, 329 (2001).  Thus, the question becomes whether Officer Edwards acted with malice.

Malice in the context of public official immunity means "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will, or fraud." *Lee v. Cline*, 384 Md. 245, 268 (2004) (quotation marks omitted). A plaintiff cannot "rely on bare allegations that a particular act raises an inference of malice." *Hines v. French*, 157 Md.App. 536, 563 (2004).  Instead, a plaintiff asserting malice "must point to specific evidence that raises an inference that the defendant's

actions were improperly motivated in order to defeat the motion."
*Id.* at 563 (quoting *Thacker v. Hyattsville*, 135 Md.App. 268, 307 (2000)).

Plaintiffs have alleged that Officer Edwards shot Mr. Glay when Mr. Glay was unarmed after Mr. Glay attempted to flee. (ECF No. 30 ¶ 6). Plaintiffs have not provided any evidence to suggest that the shooting was done out of malice. Indeed, based on Plaintiffs' response, it appears that Officer Edwards performed chest compressions after the shooting and called for medical assistance which tends to negate allegations of malice. (ECF No. 46, at 24). Accordingly, Defendants' motion for summary judgment on Plaintiffs' wrongful death and negligence claims against Officer Edwards will be granted.[6]

## VI. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants will be granted in part and denied in part. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[6] Defendants do not challenge any other aspect of the suit, including the capacity of Beatrice Koons to bring these claims.